

# THE KRUPNICK FIRM

*Attorneys at Law*
56 Hammond Road
Glen Cove NY 11542
844-741-7800 Tel
516-592-2820 Cel
516-759-0610 Fax
Email: kpkrupnick@gmail.com
http://www.krupnickfirm.com

Hon. Joan M. Azrack
United States District Judge
United States District Court
Eastern District of New York
290 Federal Plaza
Central Islip, NY 11722

RE: **Defendant's Response to SEC's Argument on Post-Judgment Discovery and Third-Party Discovery**

Dear Judge Azrack,

In response to the SEC's argument that Defendant Ribotsky's objection to post-judgment discovery, particularly with regard to third-party discovery, is improper and lacks basis, Defendant respectfully submits the following clarifications and legal counterpoints:

While Federal Rule of Civil Procedure 69(a)(1)(2) provides for post-judgment discovery in aid of judgment collection, the SEC's argument ignores the fundamental legal objections that Defendant has raised against the scope and validity of this discovery. The SEC cites cases and rules that do support broad post-judgment discovery, but this does not negate the fact that Defendant's objections are grounded in legal limitations that preclude further discovery under the current circumstances. The SEC's reliance on EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207–08 (2d Cir. 2012), does not apply in the same way here because:

- The SEC's claims are time-barred under 28 U.S.C. § 1658(b), as argued in Defendant's objections regarding the statute of limitations below herein.
- The SEC's discovery efforts are excessive, seeking information from non-parties who have no financial connection to the judgment debtor (Defendant), and the burden placed on non-parties far exceeds the need to enforce a time-barred judgment.

The SEC cannot use post-judgment discovery as a catch-all for any potential asset, especially when Defendant has no assets left to satisfy the judgment, as extensive discovery has already been conducted, and the court has already issued a discharge in 2014.

The SEC relies on a broad reading of Rule 69(a)(1)(2) to argue that it has a right to broad post-judgment discovery, including from third parties. While Rule 69(a) provides for post-judgment discovery, it is important to recognize that the scope of such discovery is not unlimited. The purpose of post-judgment discovery is to aid in the collection of a judgment, and it must be proportional and relevant. Discovery cannot be used as a fishing expedition. The court in EM Ltd. v. Republic of Argentina affirmed that the district court has broad discretion to limit discovery in a prudential and proportionate way. In this case, the SEC's discovery requests exceed that proportionality, as Defendant has provided ample financial disclosures, and the judgment is already effectively uncollectible, especially in light of the 2014 bankruptcy discharge. Further discovery in this context, especially targeting third parties with no connection to the case, is unwarranted, unduly burdensome, and irrelevant.

While third-party discovery is recognized as permissible in certain circumstances, it is crucial that such discovery is justified by specific evidence showing that a third party possesses assets or information that could aid in the collection of the judgment. The SEC has failed to show any such evidence in this case.

- Jacob Ribotsky, Tyler Levitt, and Krupnick Ribotsky Ltd. have no financial ties to Defendant, as demonstrated by prior discovery and depositions.
- Defendant has already disclosed his financial records extensively, including during the negotiations of the consent decree, the 2014 bankruptcy proceeding, the IRS enforcement of back taxes, and the 2023 bankruptcy proceeding, there is no evidence of hidden assets that would warrant further discovery from non-parties.

The SEC's attempt to continue discovery from non-parties who have no relevant information is not only an abuse of process but a clear violation of the principle that post-judgment discovery should be aimed at enforcing a valid judgment, not continuing a fishing expedition based on unfounded conjecture.

The SEC's argument that it is entitled to discovery from non-parties overlooks the underlying motivation for this discovery—which appears to be less about enforcing the judgment and more about harassment. Over the years, Defendant has already complied with extensive discovery requests, including depositions and document production. To now demand additional discovery from Jacob Ribotsky, Tyler Levitt, and Krupnick Ribotsky Ltd., who have no connection to the enforcement of the judgment, is nothing more than a punitive measure.

The SEC's repeated and disproportionate demands for discovery that is irrelevant to any potential collection of the judgment only serve to undermine the purpose of post-judgment discovery, which is to assist in enforcing a valid and enforceable judgment, that is collectible, not to harass and burden non-parties with no connection to the matter.

It is important to emphasize that the SEC has already had full access to Defendant's financial records for over a decade and has conducted exhaustive discovery efforts since 2019. Despite this, the SEC has failed to uncover any hidden assets.

The fact that the SEC has spent years examining Defendant's finances—including a detailed bankruptcy investigation, a civil case settlement, thorough divorce proceedings, financial disclosure to the trustee of the AJW Family of Funds, and other litigants —and still has not found any hidden assets strongly indicates that there is no basis for continued discovery. The SEC's failure to find assets in any of these proceedings underscores that its ongoing discovery efforts are futile, disproportionate, and an improper use of judicial resources. Additionally, under the SEC's definition of its rights to take discovery of anyone calling it judgment enforcement, that means the SEC can subpoena anyone and everyone with no clear indication of what they are looking for or

Both Defendant and his current spouse, Tammi Stempel Ribotsky, have testified under oath in depositions taken by the SEC, wherein they acknowledged that Defendant's spouse owns and operates the business, Krupnick Ribotsky Ltd., and that Defendant has no ownership, no officer role, and is not a signatory on any business accounts. The SEC's own discovery has shown that Defendant does not control this business, and no asset connection exists between Defendant and his spouse's business.

If the parties were attempting to hide this business or its income, why would they have disclosed it so transparently to the SEC during depositions? The SEC knew or should have known from the outset that Krupnick Ribotsky Ltd. is solely owned and operated by Defendant's spouse and the undersigned. Despite this, the SEC has continued to make unsubstantiated claims regarding this business, creating a legal connection between Defendant and his spouse's business income that simply does not exist.

After discovering that Defendant's spouse owns and controls the business, the SEC should have immediately ceased any further investigation into Krupnick Ribotsky Ltd. Instead, it seems that the SEC's investigators, having failed to uncover anything linking Defendant to this business, have instead resorted to speculation and conjecture regarding the business's revenue or assets being available for the enforcement of Defendant's judgment. The SEC's continued harassment of Defendant's spouse's business, despite the complete absence of any evidence connecting the business to Defendant, demonstrates the SEC's pursuit of a fishing expedition rather than legitimate enforcement of the judgment.

Defendant's spouse is under no obligation to answer for any of Defendant's debts, nor does Defendant have any access to the funds or assets of Krupnick Ribotsky Ltd. If Defendant's spouse chooses to support him with her own funds, that is entirely her prerogative. To liken this to an attempt to hide assets is not only legally incorrect but also harassing in nature. If the SEC were to argue that Defendant's spouse's financial support somehow implicates Defendant's assets, this is an improper and legally untenable position. Defendant's spouse is under no legal obligation to account for her income or how she chooses to spend it. For example, if Defendant's spouse were to win the lottery, she would have every right to support Defendant in any manner she deems appropriate. The SEC has no legal right to dictate how Defendant's spouse chooses to allocate her financial resources, and it is equally improper to suggest that her financial support could be construed as Defendant's assets.

This line of reasoning is no different than when Defendant's former spouse, Stacey Ribotsky, provided support while he was operating the NIR Group, LLC. Stacey Ribotsky did not own, operate, or control NIR Group and was not a signatory on its accounts, so the SEC properly never pursued any claims against her or suggested that her support was an asset of Defendant. The SEC cannot now claim that Defendant's current spouse's financial support is somehow an asset of Defendant, just as it could not claim Defendant's former spouse's support from Defendant to be tied to the former NIR Group.

The SEC's argument that the debt was not discharged in 2014 based on January 10, 2025, Order Denying Discharge is incorrect and should be rejected. The defendant is currently appealing that decision, and it remains non-final. The 2025 decision cannot override the finality of the 2014 discharge.

Moreover, the SEC's claim is also time-barred under the statute of limitations. The SEC argues in 2023/2024 that a securities law violation occurred between 2006 and 2008, yet under 28 U.S.C. § 1658(b), the SEC had a maximum of five years from the date of the violation to bring an enforcement action. Since the alleged violations occurred no later than 2008, and there is no definitive violation date provided in any of the SEC's submissions, the SEC's ability to bring a securities fraud enforcement action expired in 2013.

The Supreme Court's ruling in Gabelli v. SEC, 568 U.S. 442 (2013) further reinforces that the statute of limitations runs from the date of the violation, not from when the SEC discovers the violation. The SEC had full knowledge of the alleged violations no later than 2010, when it issued the Wells Notice, and filed its civil enforcement action in 2011 (Case No. 11-cv-04723), which was ultimately settled in 2013 without admission of wrongdoing.

Given these facts, the 2025 bankruptcy decision is a flawed interpretation, as it improperly allows the SEC to revive a time-barred claim based on evidence presented over a decade after the statute of limitations expired. The SEC is legally barred from asserting that violations occurred in 2006-2008, as any claim for securities fraud expired in 2013.

The SEC still fails to address why the disbursements from Defendant's capital accounts in the AJW Family of Funds have not been credited against the disgorgement amount the SEC continues to claim. Even though Defendant maintains that the judgment was discharged in 2014 as a matter of law, the SEC, as a United States regulatory agency, is bound by the laws of the United States—which include the Liu decision. The Liu decision specifically mandates that disgorgement must be credited to the victims, i.e., the parties from whom the ill-gotten gains were taken. Defendant gave up his capital accounts in the AJW Family of Funds, and as Exhibit 10 demonstrates, this information has been reported by the liquidator to Defendant for years.
If distributions from the AJW Family of Funds were made to the limited partners, those amounts must be credited towards the disgorgement the SEC seeks to enforce. It is unreasonable and unlawful for the SEC to continue demanding the full disgorgement amount when, upon information and belief, distributions from the Defendant's capital accounts have already been made. The SEC's failure to account for these distributions violates Liu and other relevant laws that govern disgorgement procedures. Therefore, the SEC must credit these distributions towards the outstanding disgorgement amount, as doing otherwise would constitute a blatant disregard of the law and an intentional effort to double-dip into funds that were already rightfully distributed, undermining the very principles of justice it purports to uphold.

The SEC is aware that, on May 16, 2024, Maureen Peyton King of the SEC's office informed the undersigned that the depositions of Jacob Ribotsky and Tyler Levitt were cancelled as a result of the Court's stay order. (See Exhibit # 11)   This stay, which the SEC itself acknowledged, effectively paused all discovery obligations, including those related to objections to subpoenas. The SEC cannot now claim that objections are untimely when it was the SEC's own decision to cancel the depositions, halting the discovery process and suspending the need to respond. As a result of the stay and the cancellation of the depositions, the objections were effectively suspended. Objections to discovery should be considered timely and valid once the discovery process resumes, which in this case only happened after the bankruptcy court's flawed decision was issued, which Defendant is now appealing.

The SEC should not be allowed to use the timing of the objections against the Third Parties and Defendant, particularly when it paused the discovery process itself. The objections which were raised promptly once the discovery process resumed after the bankruptcy court's decision, should be treated as timely and valid. The SEC cannot rely on the procedural timelines of Rule 45(d)(2)(B) to bypass the reality that the stay rendered objections unnecessary during the period when discovery was suspended. The Court should not penalize the Third Parties or Defendant for adhering to the stay order, which was issued by the same court that had jurisdiction over the matter.

Defendant respectfully requests that the Court reject the SEC's argument that the post-judgment discovery, particularly from third parties, is justified. The SEC is attempting to enforce a time-barred claim and is abusing the post-judgment discovery process to extract information from third parties who have no connection to the judgment debtor or the assets. The Court must exercise its discretion to limit discovery, particularly when it involves irrelevant, burdensome, and disproportionate requests.

The SEC has now filed to combine the post-judgment collections matter and Ribotsky's bankruptcy appeal, which are only related in the fact that the outcome of the bankruptcy appeal could impact whether the SEC can collect on the judgment, this does not justify the SEC's continued pursuit of duplicative and unnecessary discovery in the collections matter. The SEC is fully aware that the judgment in this case has never been collectible—a fact they understood when the consent decree was entered in 2013. The real issue is whether the judgment is dischargeable, not whether it is collectible. By misframing the issue as one of collectability, the SEC attempts to distract from the core question of dischargeability. If the SEC is truly concerned with judicial economy, it should not continue discovery in a case where the judgment has never been collectable, especially when that discovery may be rendered irrelevant or unnecessary depending on the outcome of the bankruptcy appeal. Continuing these efforts, when the ultimate question is dischargeability, it only wastes taxpayer resources and burdens the Court with unnecessary proceedings.

Thank you for your consideration.

Respectfully Submitted,
*s./*Kevin Phillip Krupnick, Esq.
*Attorney for Defendant*