**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION** | |
| *Plaintiff* | |
| - *against* - | Docket No.: 11-cv-4723 |
| **THE NIR GROUP; COREY RIBOTSKY; and DARYL DWORKIN** | DEFENDANTS REPLY |
| *Defendants,* | |

## DEFENDANT'S REPLY TO PLAINTIFF'S PRELIMINARY STATEMENT

Plaintiff's Preliminary Statement incorrectly characterizes the issue presently before this Court. Plaintiff repeatedly asserts that Defendant seeks to relitigate an issue that has already been decided by this Court and the bankruptcy courts. That is not Defendant's application.

The issue presently before this Court did not become ripe until December 2024, when the Liquidator completed the administration of the AJW Funds and made the final distribution of the assets Defendant relinquished pursuant to Section VI of the parties' negotiated Consent Judgment. Judge Azrack expressly retained jurisdiction over the disgorgement component of the Final Judgment. Since the December 2024 distribution, no court has been asked to determine what legal significance should be attributed to Defendant's completed performance under Section VI or whether Defendant is entitled to credit for the value of the assets ultimately distributed to the AJW Fund investors.

1

Plaintiff nevertheless argues that this issue has already been decided. Respectfully, it has not. Plaintiff's characterization of the prior proceedings materially expands the scope of Judge Azrack's March 28, 2022, Decision, the bankruptcy proceedings, and this Court's subsequent appellate review. None of those proceedings addressed the issue that became ripe only after the December 2024 liquidation and final distribution of the AJW assets.

Plaintiff's characterization of the issue was likewise presented to Magistrate Judge Shields during the June 1, 2026 motion conference. The transcript reflects that Plaintiff was permitted to argue that Defendant's application merely repeated issues previously decided by other courts. Immediately thereafter, the Magistrate Judge denied Defendant's cross-motion without affording Defendant any opportunity to respond. Defendant was not permitted to address Plaintiff's characterization of the prior proceedings, explain why the present issue differs from those previously litigated, or make any argument on behalf of his own application before the Court ruled.

Plaintiff does not dispute that Defendant was never afforded an opportunity to be heard at that conference. Because Plaintiff's procedural narrative formed the basis of the Magistrate Judge's ruling, the transcript of that conference, annexed as Exhibit "A," is central to the present Rule 72(a) Objection and demonstrates why the June 1, 2026 Order should be vacated.

## DEFENDANT'S REPLY TO PLAINTIFF'S BACKGROUND

Plaintiff's "Background" does not simply summarize the procedural history of this matter. Rather, it advances Plaintiff's interpretation of the Consent Judgment and repeatedly characterizes Defendant's present application as seeking relief previously denied by this Court and the bankruptcy courts. That characterization omits the critical event giving rise to the instant application—the December 2024 completion of the AJW liquidation and the final distribution of the assets Defendant relinquished pursuant to Section VI of the Consent Judgment.

Plaintiff's Background therefore begins its chronology at the wrong point. The relevant history does not begin with Defendant's 2021 Rule 60(b) motion. It begins with the parties' negotiated Consent Judgment in 2013, Defendant's complete performance under Section VI by relinquishing all rights, claims, interests, and title to his AJW capital accounts and related assets, and the subsequent liquidation and distribution of those assets over the ensuing decade.

The issue now before the Court arose only after that liquidation was completed in December 2024. Until that time, no court could determine the legal significance of Defendant's completed Section VI performance because the liquidation had not concluded and the value ultimately realized from the relinquished assets had not yet been determined.

Plaintiff's Background likewise advances a legal conclusion that does not appear in the Consent Judgment itself. Plaintiff repeatedly asserts that Defendant's relinquishment of his AJW capital accounts was entirely independent of the monetary judgment and can never have any legal significance in determining the remaining disgorgement obligation. The Consent Judgment contains no such language. That is Plaintiff's present interpretation of the agreement, not a provision negotiated by the parties or adopted by any prior court.

Accordingly, Plaintiff's Background should not be accepted as a neutral statement of the procedural history. It is instead the first step in Plaintiff's effort to characterize Defendant's present application as one previously decided when, in fact, the issue now before this Court did not arise until the completion of the AJW liquidation in December 2024.

## DEFENDANT'S REPLY TO PLAINTIFF'S ARGUMENT

### A. Plaintiff Incorrectly Contends That the Present Application Is Barred by the Law-of-the-Case Doctrine

Plaintiff's principal argument is that Defendant's application is barred because Judge Azrack supposedly decided this issue in her March 28, 2022 Decision denying Defendant's Rule 60(b) motion. Plaintiff's argument fails because it assumes the issue presently before this Court existed in March 2022. It did not.

The March 28, 2022 Decision addressed Defendant's Rule 60(b) application based upon the factual record then before the Court. At that time, Defendant had long since relinquished his AJW capital accounts pursuant to Section VI of the Consent Judgment. However, the AJW liquidation had not yet concluded, the assets had not yet been fully administered, and the final distributions to the AJW Fund investors had not yet occurred.

The issue presented by Defendant's present application arose only after the Liquidator completed the administration of the AJW Funds and made the final distributions in December 2024. Only then did the Court possess a complete factual record from which to determine the legal significance of Defendant's completed Section VI performance and whether the value ultimately realized from the assets Defendant relinquished should be considered in connection with the disgorgement component of the Final Judgment.

Plaintiff therefore materially expands the scope of the March 28, 2022, Decision. That Decision did not address events that had not yet occurred, nor did it determine the legal consequences of the December 2024 liquidation and distribution. Plaintiff's position necessarily asks this Court to conclude that Judge Azrack decided an issue before it became ripe for judicial determination. The Decision contains no such holding.

Accordingly, the law-of-the-case doctrine does not apply because the issue presently before the Court was neither presented to nor decided in the March 28, 2022, proceeding.

## B. Plaintiff's Collateral Estoppel Argument Likewise Fails

Plaintiff next argues that collateral estoppel independently bars Defendant's application because the bankruptcy court and this Court, on appeal, supposedly determined that Defendant owes the full $14,500,000 and therefore necessarily rejected any credit arising from Defendant's relinquishment of his AJW capital accounts. Plaintiff's argument materially overstates both proceedings.

The bankruptcy court did not determine the legal significance of Defendant's completed performance under Section VI of the Consent Judgment following the December 2024 liquidation and distribution of the AJW assets. The issue before the bankruptcy court was whether the SEC's judgment was dischargeable under the Bankruptcy Code. The bankruptcy court was not asked to determine whether Defendant should receive credit for assets previously relinquished pursuant to the Consent Judgment after those assets were ultimately liquidated and distributed to AJW investors.

Likewise, this Court's appellate review was necessarily confined to the issues presented to and decided by the bankruptcy court. Because the issue presently before this Court was never presented to the bankruptcy court, it likewise was not before this Court on appeal.

Plaintiff repeatedly states that the bankruptcy court and this Court recognized an "outstanding balance" of $14,500,000. Neither decision, however, determined the amount, if any, to which Defendant may ultimately be entitled following the liquidation and distribution of the AJW assets. Rather, both courts simply recognized the amount of the judgment entered pursuant to the Consent Judgment for purposes of determining dischargeability. Those decisions did not adjudicate the legal significance of Defendant's completed performance under Section VI, nor did they determine whether the proceeds ultimately realized from the relinquished assets should be applied in satisfaction of any portion of the disgorgement component of the Final Judgment.

Accordingly, the identical issue required for collateral estoppel is absent. Because neither the bankruptcy court nor this Court on appeal decided the issue now presented, Plaintiff cannot satisfy the essential elements of collateral estoppel, and that doctrine provides no basis to deny Defendant's Rule 72(a) Objection.

**C. The June 1, 2026, Order Is Clearly Erroneous and Contrary to Law**

Plaintiff argues that the June 1, 2026, Order is neither clearly erroneous nor contrary to law because Magistrate Judge Shields merely applied Judge Azrack's March 28, 2022, Decision. That argument assumes the present application presented the same issue decided in 2022. It did not.

More fundamentally, however, the transcript of the June 1, 2026, conference demonstrates that the procedure employed by the Magistrate Judge deprived Defendant of any meaningful opportunity to address the issue before the Court ruled. After resolving the discovery issues, SEC counsel affirmatively requested permission to address Defendant's cross-motion. The Court granted that request, and SEC counsel proceeded to present substantive argument urging denial of Defendant's application.

SEC counsel argued that Defendant's application merely repeated arguments previously rejected by Judge Azrack, characterized the application as a delay tactic, and urged the Court to deny the requested declaratory relief. Immediately thereafter, the Court denied Defendant's cross-motion. At no point before the ruling was Defendant afforded an opportunity to present the application, respond to Plaintiff's characterization of the prior proceedings, or explain why the issue before the Court arose only after the December 2024 liquidation and final distribution of the AJW assets.

Plaintiff now argues that Defendant received all the process required because the matter had been fully briefed. The transcript demonstrates a different sequence of events. Once the Court permitted Plaintiff to present substantive oral argument directed specifically to Defendant's application, fundamental fairness required that Defendant likewise be afforded an opportunity to respond before the Court ruled. Instead, the Court heard only Plaintiff's characterization of the issue before rendering its decision.

That procedural defect was not harmless. Plaintiff's oral presentation formed the very premise upon which its Opposition continues to rely—namely, that Judge Azrack and the bankruptcy courts had already resolved the issue presently before this Court. As demonstrated throughout this Reply, that premise is incorrect. Because Defendant was not afforded the opportunity to explain why the present application involves a distinct issue that did not become ripe until December 2024, the June 1, 2026, Order rests upon an incomplete presentation of the issue and should be vacated pursuant to Rule 72(a).

The issue presently before the Court is not whether the Consent Judgment expressly grants Defendant an automatic credit. It plainly does not. The issue is whether the Court should now infer an equally absent contractual prohibition—that Defendant's completed performance under Section VI can never have any legal significance in determining the remaining disgorgement obligation after the assets he relinquished were ultimately liquidated and distributed.

## D. PLAINTIFF'S INTERPRETATION CANNOT BE RECONCILED WITH THE PARTIES' NEGOTIATED CONSENT JUDGMENT OR THE EQUITABLE PURPOSE OF DISGORGEMENT

Plaintiff's Opposition repeatedly argues that because the Consent Judgment does not expressly provide Defendant with a credit or offset, Defendant's completed performance under Section VI

can have no legal significance in determining the remaining disgorgement obligation. Respectfully, that argument fundamentally misstates the issue presently before the Court.

The issue before this Court is not whether the Consent Judgment expressly provides Defendant with a contractual credit or offset. Rather, the issue is whether the Securities and Exchange Commission, after knowingly negotiating for the conveyance of the very property in which Defendant's alleged ill-gotten gains remained invested, accepting that conveyance pursuant to the parties' negotiated Consent Judgment, and ultimately causing that property to be liquidated and distributed to the very investors the Commission alleges were harmed, may now disregard Defendant's completed performance altogether when determining the remaining disgorgement obligation.

That issue cannot be analyzed in a vacuum. It must be considered in the factual context in which the Consent Judgment was negotiated.

Prior to execution of the Consent Judgment, Defendant completed the SEC's waiver process and provided the Commission with a complete disclosure of his financial condition. Through that process, the Commission learned that Defendant possessed no meaningful liquid assets from which to satisfy the contemplated monetary judgment. More importantly, the Commission learned that Defendant's principal remaining asset consisted of his AJW capital accounts.

Contrary to Plaintiff's present characterization, Defendant did not simply receive distributions from the AJW Funds and dissipate the monies the Commission later characterized as ill-gotten gains. During the period relevant to the Commission's allegations, Defendant's distributions from the AJW Funds were primarily limited to amounts necessary to satisfy tax liabilities attributable to the funds and to fund operations. As the Commission knew through the waiver process, the overwhelming majority of Defendant's economic interest remained invested in the AJW Funds

and was reflected in Defendant's capital accounts. As a result, Defendant became one of the largest holders of capital interests in the AJW Funds.

The contemporaneous record confirms that the Commission negotiated the Consent Judgment with precisely that understanding. Shortly after entry of the Consent Judgment, Defendant's then-counsel, Douglas R. Hirsch, Esq., advised the Court that Defendant had fully disclosed his financial condition to the Commission before the Consent Judgment was negotiated, that the Commission was "well aware that there was no meaningful amount of money to collect," and that the Commission specifically required Defendant "to forfeit his interests in the funds, which constituted the largest portion of his net worth." (ECF No. 97.)

Those statements were not made years later in an attempt to reinterpret the Consent Judgment. They were made contemporaneously by counsel who personally participated in negotiating the agreement and explain the factual circumstances under which the Commission drafted Section VI. They demonstrate that the Commission knowingly negotiated for Defendant's conveyance of the AJW capital accounts because those accounts represented Defendant's principal remaining asset and embodied the economic value the Commission sought to recover through disgorgement. The Commission therefore did not negotiate for the surrender of an unrelated asset. It negotiated for the surrender of the very property in which Defendant's remaining economic interest— including the gains the Commission alleged were ill-gotten—remained invested.

Defendant fully performed that obligation in 2013. Upon execution of the Consent Judgment, Defendant relinquished "all rights, claims, interests and title of any kind or nature" in the AJW capital accounts and related assets. From that moment forward, Defendant retained no legal ownership, no equitable ownership, no beneficial ownership, no right to control those assets, no right to manage them, no right to receive future

distributions from them, and no right to reclaim them under any circumstance. Defendant's ownership interest was completely extinguished.

Plaintiff's Opposition repeatedly attempts to minimize Defendant's performance by characterizing Section VI as merely requiring Defendant to "give up a claim." That characterization fundamentally misstates what Defendant actually conveyed.

Defendant did not merely waive a legal claim or relinquish a contractual right. Defendant conveyed the underlying property itself. The distinction is critical. Had Defendant merely abandoned a claim, the AJW capital accounts would have remained Defendant's property. They did not. By operation of Section VI, Defendant permanently transferred every ownership interest he possessed in those assets. The AJW capital accounts ceased to belong to Defendant and became assets to be administered and liquidated entirely independent of Defendant, who retained no continuing ownership interest, no right to direct their disposition, and no right to receive any benefit from their ultimate liquidation.

That distinction is not semantic—it is the very issue before the Court.

The Commission negotiated for Defendant's conveyance of the AJW capital accounts because those accounts represented Defendant's principal remaining asset and the repository of the economic value the Commission sought to disgorge. Defendant then performed exactly as the Commission required. He did not retain the property. He did not retain a contingent interest in the property. He did not retain a future right to receive proceeds from the property. He surrendered the property itself.

The subsequent history of those assets is equally undisputed. After Defendant conveyed the AJW capital accounts pursuant to Section VI, those assets were administered by court-appointed liquidators, liquidated over the ensuing years, and, in December 2024, the remaining proceeds were distributed to the AJW investors. Defendant played no role whatsoever in that process. He exercised no control over the liquidation, no authority over the disposition of the assets, no influence over the distributions, and received none of the proceeds generated from property he had conveyed more than a decade earlier.

Plaintiff therefore attempts to redefine Defendant's completed performance by describing it as the relinquishment of a "claim." It was not. Defendant conveyed the underlying property itself. The issue presently before this Court is therefore not whether Defendant relinquished a claim. The issue is what legal significance must now be attributed to Defendant's completed conveyance of the very property the Commission identified during the waiver process, negotiated to obtain through the Consent Judgment, accepted pursuant to Section VI, and ultimately caused to be liquidated and distributed to the AJW investors.

That sequence represents far more than the mere liquidation of an investment. It represents the culmination of the very remedy the Commission negotiated through the Consent Judgment.

The Commission required Defendant to convey the AJW capital accounts because they represented Defendant's principal remaining asset and the repository of the economic value the Commission sought to recover. Defendant complied. Thereafter, those very assets were administered by independent liquidators, liquidated, and the resulting

11

proceeds distributed to the AJW investors. In other words, the property Defendant conveyed pursuant to Section VI ultimately reached the very investors the Commission alleges were injured.

That is the textbook purpose of disgorgement. Disgorgement is an equitable remedy designed to deprive a wrongdoer of alleged ill-gotten gains and restore those gains, or the value thereof, to the injured parties. Here, the Commission negotiated for the very property in which the alleged gains remained invested, Defendant surrendered that property in its entirety, and that property was ultimately liquidated and distributed to the AJW investors.

Plaintiff nevertheless asks this Court to disregard that entire sequence of events. Under Plaintiff's interpretation, Defendant's completed conveyance of the AJW capital accounts has no legal significance whatsoever. The Commission negotiated for the property, obtained the property, caused the property to be liquidated, caused the proceeds to be distributed to the AJW investors, and now seeks to recover the full disgorgement amount as though Defendant had never conveyed those assets in the first place.

That is not an interpretation of the Consent Judgment. It is an attempt to obtain the benefit of Defendant's completed performance while simultaneously ignoring the legal consequences of that performance.

The practical effect of Plaintiff's interpretation is unmistakable. Defendant would permanently surrender the very property in which the Commission alleged the ill-gotten gains remained invested, lose every ownership interest in those assets, receive none of the

proceeds generated by their liquidation, and yet remain obligated to generate an equivalent amount of wealth over the ensuing decades merely to satisfy the same disgorgement obligation. The Commission would therefore obtain both the conveyed property and the full disgorgement judgment without ever accounting for the property it already received. That is a double recovery.

Plaintiff's own Opposition demonstrates the inconsistency of its position. Throughout its brief, Plaintiff repeatedly argues that the AJW investors recovered only a fraction of the value represented by their capital accounts because the liquidation realized substantially less than the pre-liquidation value of those accounts. In making that argument, Plaintiff necessarily acknowledges that the AJW capital accounts possessed value before liquidation and that the liquidation merely determined the percentage of that value ultimately realized. Defendant's capital accounts were part of that same fund structure.

Accordingly, Plaintiff cannot acknowledge the existence of value when discussing the AJW investors while simultaneously arguing that Defendant's conveyance of the identical category of property carried no legal significance whatsoever. Nor can Plaintiff acknowledge that every AJW investor ultimately received only a percentage of his or her capital account while ignoring that Defendant, as one of the largest holders of AJW capital accounts, necessarily sustained that same proportional reduction when his own capital accounts were liquidated. The Commission cannot value the same property one way when discussing the investors and an entirely different way when discussing Defendant.

Judge Azrack has already determined that Defendant is bound by the negotiated terms of the Consent Judgment because Defendant voluntarily entered into that agreement. Defendant does not dispute that conclusion. The same principle necessarily applies to the Commission.

The Consent Judgment is not a unilateral enforcement order drafted by the Court. It is a negotiated agreement drafted by the Commission after requiring Defendant to complete the SEC's waiver process and provide a complete disclosure of his financial condition. The Commission therefore negotiated the agreement with full knowledge that Defendant possessed no meaningful liquid assets and that Defendant's AJW capital accounts represented the largest component of Defendant's net worth. As ECF No. 97 confirms, the Commission specifically negotiated for Defendant's forfeiture of those interests with full knowledge of Defendant's financial condition.

Having drafted the Consent Judgment and negotiated for Defendant's conveyance of the AJW capital accounts, the Commission is bound by the same agreement just as Defendant is bound by the obligations he voluntarily undertook. The Commission cannot now, more than a decade later, ask this Court to rewrite the agreement by implying material contractual provisions it elected not to include.

Nowhere does the Consent Judgment provide that Defendant's completed conveyance of the AJW capital accounts is forever without legal significance. Nowhere does it provide that, after Defendant relinquished "all rights, claims, interests and title" to those assets, the Commission may disregard the legal significance of that completed conveyance merely because the assets were thereafter administered through the liquidation process and ultimately distributed to the AJW investors. Had the Commission intended those consequences, it could have drafted such language. It did not.

Indeed, Plaintiff's present interpretation is not an interpretation of the Consent Judgment at all. It is an attempt to add a material limitation that appears nowhere within the negotiated agreement. If the Commission believed that Defendant's completed performance under Section VI would forever be irrelevant to the disgorgement obligation imposed by Section V, it was incumbent upon the Commission—as the drafter of the Consent Judgment—to include that language. It chose not to do so.

Moreover, to the extent this Court concludes that the Consent Judgment is reasonably susceptible to more than one interpretation regarding the legal significance of Defendant's completed performance under Section VI, settled principles of contract interpretation require that any ambiguity be construed against the drafter. Having drafted the Consent Judgment, the Commission cannot resolve any ambiguity in its own favor by advancing a litigation position that adds substantive contractual limitations nowhere found within the agreement itself.

Ultimately, Plaintiff's argument asks this Court to treat Defendant's completed performance under Section VI as though it never occurred. The record demonstrates otherwise. Through the waiver process, the Commission identified Defendant's AJW capital accounts as Defendant's principal remaining asset and negotiated for Defendant's conveyance of those assets through the Consent Judgment. Defendant fully performed that obligation by relinquishing "all rights, claims, interests and title" to those capital accounts and related assets. From that point forward, Defendant retained no ownership interest in those assets, and they thereafter proceeded through the liquidation process, were liquidated, and the resulting proceeds were distributed to the AJW investors. The Commission thus received the benefit of the very performance it negotiated for. It cannot now ask this Court to disregard the legal significance of Defendant's completed performance simply because doing so would permit the Commission to seek recovery of the same alleged disgorgement a second time.

The issue before this Court is therefore not whether Defendant seeks a contractual "credit" or "offset." The issue is whether the legal significance of Defendant's completed performance under Section VI may now be ignored after Defendant fully performed the very obligation the Commission negotiated for, relinquished all rights, claims, interests and title to the AJW capital accounts, and those conveyed assets were ultimately liquidated and distributed to the AJW investors. No prior court has decided that issue because it did not become ripe until the AJW Liquidator completed the liquidation and final distribution of those conveyed assets in December 2024. Defendant respectfully submits that the Court should decide that issue on the complete factual record that now exists and enforce the Consent Judgment the parties actually negotiated— not the agreement the Commission now seeks to rewrite through litigation.

## E. PLAINTIFF'S DUE PROCESS ARGUMENT FAILS

Plaintiff argues that Defendant received all the process required because Defendant filed a cross-motion, Plaintiff filed an opposition, Defendant filed a reply, and due process "requires nothing more." That argument, however, does not accurately reflect what occurred at the June 1, 2026, conference.

Defendant does not contend that oral argument is constitutionally required in every case. Nor does Defendant argue that the Magistrate Judge was obligated to conduct an evidentiary hearing before ruling on the parties' applications. Rather, Defendant challenges the procedure actually employed during the June 1, 2026, conference.

The transcript reflects that, after addressing the discovery issues, Plaintiff requested permission to address Defendant's cross-motion. The Court granted that request, and Plaintiff proceeded to present substantive argument urging denial of Defendant's application. Plaintiff argued that Judge Azrack had already decided the issue presented, that the bankruptcy proceedings likewise

foreclosed Defendant's position, and that Defendant's application merely sought to relitigate matters already resolved.

Immediately thereafter, the Magistrate Judge denied Defendant's cross-motion.

At no point before the ruling was Defendant afforded the opportunity to address Plaintiff's characterization of the prior proceedings, explain why the issue before the Court did not become ripe until the AJW Liquidator completed the liquidation and final distribution of the conveyed assets in December 2024, or respond to Plaintiff's interpretation of the Consent Judgment. Instead, Defendant's application was denied after the Court heard only Plaintiff's characterization of the issue presented.

That omission was not harmless. Plaintiff's present Opposition demonstrates precisely why. Throughout its Opposition, Plaintiff continues to argue that Defendant's application merely seeks to relitigate issues previously decided by Judge Azrack and the bankruptcy courts. As demonstrated throughout this Reply, that characterization is incorrect because no prior court has ever determined the legal significance of Defendant's completed performance under Section VI following the December 2024 liquidation and final distribution of the AJW assets. Defendant was never afforded the opportunity to make that distinction before the Magistrate Judge ruled.

Accordingly, Defendant's Rule 72(a) Objection does not rest upon the absence of oral argument. It rests upon the fact that the dispositive premise underlying the June 1, 2026, Order—that the issue had already been decided—was presented by Plaintiff and adopted by the Court without Defendant being afforded the opportunity to respond before the ruling was rendered. Under these circumstances, the June 1, 2026, Order should be vacated and Defendant's cross-motion considered after both parties have been afforded an equal opportunity to address the issue actually presented.

## CONCLUSION

Plaintiff's Opposition rests upon the mistaken premise that Defendant seeks to relitigate issues already decided by this Court and the bankruptcy courts. As demonstrated herein, that premise is incorrect. No prior court has been asked to determine the legal significance of Defendant's completed performance under Section VI following the December 2024 liquidation and final distribution of the AJW assets Defendant conveyed pursuant to the parties' negotiated Consent Judgment.

The record further demonstrates that the Commission negotiated for Defendant's conveyance of the AJW capital accounts with full knowledge of Defendant's financial condition, Defendant fully performed those obligations by relinquishing all rights, claims, interests, and title to those assets, and those assets were thereafter liquidated and distributed to the AJW investors. Plaintiff now asks this Court to disregard the legal significance of that completed performance by implying contractual limitations that appear nowhere within the Consent Judgment and by characterizing Defendant's present application as one previously decided. Neither proposition is supported by the record.

Finally, the transcript of the June 1, 2026, conference establishes that Defendant was never afforded the opportunity to be heard before the Magistrate Judge ruled on Defendant's cross-motion. Instead, Plaintiff was permitted to present its characterization of the issue, after which the Court immediately denied Defendant's application without affording Defendant the opportunity to address Plaintiff's arguments, explain why the issue did not become ripe until December 2024, or otherwise be heard before the ruling was rendered. The resulting Order therefore rests upon an incomplete presentation of the issue now before this Court.

For all of the foregoing reasons, Defendant respectfully requests that the Court sustain Defendant's Rule 72(a) Objection, vacate the June 1, 2026, Order, remand Defendant's cross-

motion for consideration after Defendant is afforded the meaningful opportunity to be heard to which he was entitled, and grant such other and further relief as this Court deems just and proper.

Dated:  Glen Cove, New York
       July 21, 2026

Respectfully Submitted,
KEVIN P KRUPNICK, Esq.
*Attorney for Corey Ribotsky*
56 Hammond Road
Glen Cove NY 11542
516-592-2820 Tel
516-759-0610 Fax
kpkrupnick@krupnickfirm.com

EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X
                              :
SECURITIES AND EXCHANGE       :
COMMISSION,                   :        11-CV-4723 (JMA)(AYS)
            Plaintiff,        :
                              :        June 1, 2026
                              :
            V.                :        Central Islip, NY
                              :
THE NIR GROUP, LLC, et al.,   :
                              :
            Defendant.        :
------------------------------X

   TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE
        BEFORE THE HONORABLE ANNE Y. SHIELDS
          UNITED STATES MAGISTRATE JUDGE

APPEARANCES:
For the Plaintiff:            MAUREEN PEYTON KING, ESQ.
                              Securities and Exchange Comm.
                              200 Vesey Street, Room 400
                              New York, NY 10281

For the Defendant:            ROBERT KNUTS, ESQ.
                              Sher Tremonte LLP
                              90 Broad Street
                              New York, NY 10004

                              KEVIN KRUPNICK, ESQ.
                              23 Village Square
                              Glen Cove, NY 11542

Court Transcriber:            ARIA SERVICES, INC.
                              c/o Elizabeth Barron
                              274 Hovey Road
                              Milo, ME 04463
                              Aria@leinen.net


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

THE CLERK: Calling 11-CV-4723, Securities and Exchange Commission v. The NIR Group, LLC, et al.

Please state your appearances for the record.

MS. PEYTON KING: This is Maureen Peyton King for the United States Securities and Exchange Commission. Good afternoon, your Honor.

THE COURT: Good afternoon.

MR. KNUTS: My name is Robert Knuts. It's spelled K-n-u-t-s. I filed a notice of appearance today to represent nonparty Krupnick Ribotsky Limited.

THE COURT: Okay. Is anybody else on the line?

MR. KRUPNICK: Yes, Kevin Krupnick for the defendant Corey S. Ribotsky.

THE COURT: Okay. Anybody else?

All right, let me hear from the government.

MS. PEYTON KING: Your Honor, the SEC needs discovery to reveal Mr. Ribotsky's true financial condition and to aid in collecting. At this point, the SEC believes that the most efficient path forward is through the depositions of individuals, including Mr. Ribotsky and Krupnick Ribotsky Limited, which the SEC asked the Court to order before the stay back in August, 2025. In addition, we had scheduled a

deposition of (ui) Ribotsky, who was to testify just after the stay went into effect, so we will endeavor to schedule that on our own and revert if there's an issue. But the SEC respectfully requests that the Court grant the SEC's request to order the depositions, and we will revert if there is any other issue.

With regard to documents, the requests are now two years old and the Court has ordered -- granted the motions to compel four times. We've gotten some of the documents but at this point, we think it's more efficient to just proceed with the depositions and revert on any documents that are needed.

THE COURT: I do agree with you on that, so that's what I was going to say. I think it's best to take the depositions. How many do you want?

MS. PEYTON KING: I would like you to order Mr. Ribotsky and Krupnick Ribotsky Limited to be deposed, and I -- there are some others I have in mind but I don't know that orders are necessary.

THE COURT: All right, I'm going to order that those two take place. What's the time frame that you want?

MS. PEYTON KING: If I could get them within 21 days or so, that would be great.

THE COURT: All right. As far as place, I'm

not going to order that they take place in the courthouse.

MS. PEYTON KING: That's fine, thank you.

THE COURT: Work out with counsel the manner and place, okay?

MS. PEYTON KING: Will do, your Honor. Would you also like me to address the cross-motion at this time?

THE COURT: You mean for documents?

MS. PEYTON KING: No, for Mr. Ribotsky's request for a declaratory judgment on what's owed.

THE COURT: You can address it but the depositions are still going to go forward. You can address it if you like.

MS. PEYTON KING: Okay. The SEC requests that the Court deny Mr. Ribotsky's request. It's just a delay tactic, and this Court entered a final valid judgment, ordered the 12.5 million in disgorgement, the one million dollars in pre-judgment interest, and the million-dollar penalty. And on March 28th, 2022, at docket entry 120, the Court denied Ribotsky's 60(b) motion to vacate the final judgment, declare the final judgment satisfied, and enjoin collections as untimely and contrary to established law regarding the finality of monetary judgment. Ribotsky's arguments, which are

improperly styled as a cross discovery motion, are a repackaging of his prior 60(b) motion.

And even if they were not and Mr. Ribotsky were to bring a 60(b) motion seeking to revisit the amounts ordered again, the motion should fail for the same reasons the Court denied the prior motion. As to timeliness, the Court has found that seven years was too long for a 60(b) motion. It's now approximately eleven years. And the requests again run contrary to the established law on finality of monetary judgments.

In any event, Mr. Ribotsky in a contemporaneous email at around the time of his settlement filed in the bankruptcy court an email that seems to concede that the accounts are of little value and that they are in addition to the monetary sanctions. Mr. Ribotsky also filed K1's addressed to him showing nominal amounts in the AJW accounts in 2024.

Mr. Ribotsky admits that the liquidator distributed the funds, not the SEC, so asking the SEC to account for the funds doesn't make sense, and the liquidator's report from 2024 showed that it had receipts of less than eight million dollars, which appears attributable to a litigation settlement and claims that appear to result in investors receiving

between 2 or less than 6%. So Mr. Ribotsky's arguments have already been addressed by this Court's 2022 order and are essentially frivolous given his filings and the liquidator's report.

THE COURT: I agree that they've been already addressed by this Court. Any such motion is denied. Go forward with the depositions.

MS. PEYTON KING: Thank you very much, your Honor.

THE COURT: Thank you all for appearing.

* * * * * *

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

ELIZABETH BARRON                    July 2, 2026